**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| CINDY GILLESPIE, SHERRY BLACKBURN, and JOSEPH BLACKBURN, <br> on behalf of themselves and a class, <br><br> Plaintiffs, <br><br> v. <br><br> CHASE HOME FINANCE, LLC <br><br> Defendants. | Case No. 3:09-CV-191 |

**PLAINTIFFS' OPPOSITON TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons stated below, Plaintiffs sufficiently pled both that Defendants' letters to Plaintiffs constituted an attempt to collect a debt under the FDCPA and that Defendant knew that Plaintiffs were represented by counsel.

**I.   FACTS**

In 2006, plaintiff Cindy Gillespie, through counsel, filed suit to rescind her mortgage, originated by Ameriquest Mortgage. In 2006, plaintiffs Sherry Blackburn and Joseph Blackburn, through counsel, also filed suit to rescind their mortgage, originated by Ameriquest Mortgage. The cases are still pending as part of the Multidistrict Litigation against Ameriquest before Judge Aspen in the Northern District of Illinois (hereinafter "MDL"). 05cv07097 *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation* (Cmplt. ¶ 12). The MDL contains hundreds of individual actions against Ameriquest and, among other parties, the servicers currently servicing the loans, which raises the question of whether Plaintiffs have rescinded their mortgage

1

and whether the owner and servicer, such as Chase, are obligated to release the mortgage on their property. In Illinois and Indiana, the subsequent filing of a mortgage foreclosure action would be subject to dismissal because a prior action is pending on the issue of whether there is a mortgage between the parties. Thus, all entities holding any interest in these mortgage loans are on notice of the litigation status of said loans and that the borrowers were represented by counsel.

In 2009, well after the individual rescission lawsuits were pending and the cases had been assigned to the multi-district venue, Chase first acquired an interest in the Gillespie and Blackburn loans. (Cmplt. ¶ 15). At the time, the loans were in default, according to the books and records of defendant and its predecessors. (Cmplt. ¶ 16). On information and belief, Chase, as servicer, possessed books and records indicating that these loans were part of the Ameriquest litigation, that the borrowers were represented by counsel, and that these loans were subject to a claim that they were rescinded (Cmplt. ¶ 17).

On January 24, 2009, Chase sent plaintiff Cindy Gillespie, directly, the letter attached as <u>Exhibit A</u>, which refers to Gillespie's alleged "unresolved delinquency" and seeks to "help you resolve your delinquency." (Cmplt. ¶ 18). On or about February 7, 2009, Chase Home Finance, LLC sent plaintiffs Sherry and Joseph Blackburn, directly, the letter attached as <u>Exhibit B</u>, which refers to the Blackburns' alleged "unresolved delinquency" and seeks to "help you resolve your delinquency," and further states that "Chase Home Financial is attempting to collect a debt, and any information obtained will be used for that purpose." (Cmplt. ¶ 19).

Plaintiffs' counsel contacted Karen Stevenson, one of Ameriquest's attorneys in the MDL, who had been representing Chase's interests and resolving disputes regarding them in that litigation, although no attorney appearance was ever filed. Ms. Stevenson had represented the

previous servicer of Plaintiffs' mortgage loans, CitiResidential. On February 23, 2009, Ms. Stevenson sent Plaintiffs' counsel an email specifying, "*Chase* is checking to make sure that the litigation hold is on the Blackburn loan." (Emphasis added)(Exhibit C; Cmplt. ¶ 20), recognizing that Chase was aware of the litigation status of the loans involved in the MDL, which would show that Plaintiffs were represented by counsel. (Cmplt. ¶ 21).

On March 14, 2009, Chase Home Finance, LLC sent the Blackburns, directly, the letter attached to the Complaint, attached hereto as Exhibit D, which refers to the Blackburns' alleged "unresolved delinquency" and seeks to "help you resolve your delinquency." (Cmplt. ¶ 22). It further states that their "account is now being handled by our Homeowner's Assistance Department," that there are "workout options which might help you resolve your delinquency," and that "A Homeowner's Assistance specialist will discuss with you any changes in your financial situation and determine your ability to repay the loan"and "may be able to offer a workout option designed to cure your delinquency and keep you in your home." Exhibit D

On April 2, 2009, Ms. Stevenson responded to Plaintiffs' counsel, assuring them that Chase placed a litigation hold on the Blackburn account. Exhibit E. Thus, Ms. Stevenson was clearly in communication with parties at Chase regarding the litigation.

**II.    ARGUMENT**

    **A.    12b(6) STANDARD**

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but "the factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007). Notice pleading remains the standard

3

under which federal complaints should be analyzed. *Windy City Metal Fabrictors & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 667 (7th Cir. 2008). A Rule 12(b)(6) motion to dismiss "requires the court to examine not whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Tiv v. Reno*, 99 C 872, 2000 U.S. Dist LEXIS 2170, at *13 (N.D. Ill. February 23, 2000). The Court must accept all factual allegations in the complaint as true and draw reasonable inferences from such facts in the plaintiff's favor. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Rule 12(b)(6) should be utilized to dismiss a complaint only when the complaint states no legal claim; assessing factual support for the claim is not the Rule's purpose. *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999). Thus, on a motion to dismiss for failure to state claim upon which relief may be granted, the movant may raise only questions of law and not fact. *Id.* "Where the pleadings raise a contested issue of material fact, a Rule 12(b)(6) motion must be denied." *United States v. LaSalle Bank, NA*, 07 C 6196, 2008 U.S. Dist. LEXIS 60756, at *6 (N.D. Ill. July 29, 2008), *quoting Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978).

      **B.    DEFENDANT'S LETTERS CONSTITUTED AN ATTEMPT TO COLLECT A DEBT**

A creditor that acquires delinquent mortgage loans as part of its regular business practices is a debt collector and must comply with the FDCPA in collecting upon said debts. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496 (7th Cir. 2008); *Scholosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003).

The letters that Chase sent to Gillespie and the Blackburns fall within the purview

4

of the FDCPA because they were sent in an attempt to collect a debt. The language in the letters plainly indicates an attempt to collect a debt. Offering to "help you resolve your delinquency," and to explore "options which might help you resolve your delinquency", and stating that "A Homeowner's Assistance specialist will discuss with you any changes in your financial situation and determine your ability to repay the loan"and "may be able to offer a workout option designed to cure your delinquency and keep you in your home," are all just elaborate ways of requesting payment. What is the curing of a default or resolving of a delinquency other than payment of a debt? Defendant's letters all had as their central goal the collection of money from Plaintiffs, and thus they were sent in collection of a debt in violation of the FDCPA.

The Federal Trade Commission (FTC) is of the opinion that such communications must comply with the FDCPA. In an advisory opinion, the FTC held that debt collectors may contact debtors to inform them of options regarding their delinquencies, but that all such communications must comply with FDCPA requirements. *See* Exhibit F, Federal Trade Commission Advisory Opinion, March 19, 2008. The interpretation of a statute by the Agency charged with enforcement of that statute is to be given deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). Thus, the FTC's opinion regarding the applicability of the FDCPA to the letters in this case should be given great weight. Here, the letters that Chase sent to Plaintiffs violated the FDCPA because they were sent directly to parties that were represented by counsel.

The cases Defendant cites to support its point that the letters do not fall under the FDCPA are not persuasive. In *Salsbury v. Trac a Chec*, 365 F. Supp. 2d 939 (C.D. Ill. 2005), the debt collector merely called the debtor to inform him that she had verified that he was being

represented by counsel and would not further directly contact him. This is not analogous in any way to the letters received by Plaintiffs, because the communication in no way concerned the debt or contained any language that could be construed as an attempt to make arrangements for payment. Thus, it is inapplicable to the case at hand.

In *McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616 (7th Cir. April 25, 2007), the letter at issue was sent in response to a tenant's letter requesting that his landlord return his security deposit, and it merely contained a breakdown of how Plaintiff's security deposit had been spent. The claim described was thus by the debtor against the creditor, not vice versa. That was a very different situation from the case at hand, where the letter referred to resolving a delinquency and curing a debt, and where one letter specifically stated that it was sent in connection with the collection of a debt. Therefore, *McCready* does nothing to further Defendant's position.

Defendant also cites *Porter v. Fairbanks Cap'l Corp.*, No. 01 C 9106, 2003 WL 21210115 (N.D. Ill. May 21, 2003), where a videotape sent to debtors was held not to be an attempt to collect a debt. However, in *Porter*, the videotape at issue was a generic videotape sent to a broad swath of debtors in financial difficulty regarding how to avoid foreclosure. Here, the letters specifically mentioned that the Plaintiffs were in default and stated that there may exist options to cure the default or resolve the delinquency, essentially attempting to settle a specific outstanding delinquency. Thus, its personalized nature distinguishes it from the videotape in *Porter*. Further, this case was settled pending appeal, so the amount of weight that should be given to a district court's ruling on a motion to dismiss in such a case is highly suspect.

*Santoro v. CTC Foreclosure Serv.*, 12 Fed.Appx. 476 (9th Cir. 2001), an unpublished decision, is also distinguishable. *Santoro* relied on *Bailey v. Security National Servicing Corporation*, 154 F.3d 384 (7thCir. 1998) to find that a workout option letter did not fall under the FDCPA. However, *Santoro*'s reliance on *Bailey* is misplaced. *Bailey* merely held that where a loan had been restructured, sending a payment schedule or coupon book for the loan that is no longer in default does not violate the FDCPA. In the instant case, the loans for which the letters were sent were in default. Further, in California, the foreclosure process is nonjudicial and cannot result in a monetary deficiency, that is, it cannot result in the collection of money. Whereas, in Indiana, foreclosure is judicial and can result in a deficiency. Thus, in Indiana, one could be liable for a monetary judgment subsequent to foreclosure. Therefore, a threat of foreclosure in Indiana could result in a payment of money, which it could not in *Santoro*. In any event, all cases cited by Defendant were prior to the FTC Opinion.

Defendant makes the argument that plainly stating in the letter that it "is attempting to collect a debt" is "boilerplate language." Def.'s Mtn. To Dismiss, p. 6. This is absurd. "Boilerplate language" or not, both parties are bound by the language. Would Chase allow Plaintiffs to disregard "boilerplate language" in the note and mortgage? Of course not.

### C.  DEFENDANT KNEW PLAINTIFFS WERE REPRESENTED BY COUNSEL

In its Motion to Dismiss, Defendant asserts that Plaintiffs allege no facts to support the allegation that Chase knew Plaintiffs were represented by counsel. This is false. Plaintiffs allege that "On information and belief, Chase possessed books and records indicating the litigation status of said loans," recognizing that Chase was aware of the litigation status of the loans involved in the MDL, which would show that Plaintiffs were represented by counsel.

(Cmplt. ¶¶ 17, 21).  If Chase was aware of the litigation status, which Plaintiffs pled, then they were aware that Plaintiffs were represented by counsel.  Knowing that the Plaintiffs loans were part of the MDL and blatantly refusing to ask whether they were represented by counsel so that they could later claim to be blissfully ignorant of such a fact would render 1692(c) meaningless.  The Seventh Circuit has held that "knowledge includes a willful blindness or a failure to investigate because one 'was afraid of what the inquiry would yield.'" *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007), overruled on unrelated grounds, *quoting Louis Vuitton v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989).  Knowledge of the litigation clearly put defendant on notice that the Plaintiffs were represented.

      More significantly, the communication between Plaintiffs' attorney in the Ameriquest litigation and Karen Stevenson, an attorney for Ameriquest in that litigation, in which Ms. Stevenson appeared to act on behalf of and was communicating on behalf of Chase, demonstrated that Chase was made aware of the litigation and that the borrowers were represented by counsel.  Ms. Stevenson had the authority to inquire into placing litigation holds on accounts held by Chase, as she did for the Blackburn account, and to represent to Plaintiffs' counsel that such a litigation hold was in fact in place.  (Cmplnt. ¶ 19, Exhibit E).  Chase placing a litigation hold on an account clearly demonstrates knowledge that a loan is in litigation.  Further, Ms. Stevenson acting in such a capacity is enough to logically impute her knowledge of client representation to Chase.  She was acting as a de facto attorney, regardless of the fact that Chase was not yet a named party in the Ameriquest litigation.

      WHEREFORE, because Plaintiffs sufficiently pled both that Defendants' letters to Plaintiffs constituted an attempt to collect a debt under the FDCPA and that Defendant knew

that Plaintiffs were represented by counsel, Plaintiffs respectfully request that the Court deny

Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.

                                                Respectfully Submitted,

                                                s/ Daniel A. Edelman
                                                Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

9

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on July 22, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Stephen R. Meinertzhagen
smeinertzhagen@burkelaw.com

Madeleine Milan
mmilan@burkelaw.com

LeAnn Pedersen Pope
lpope@burkelaw.com

                 s/ Daniel A. Edelman
                 Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
 & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)