# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CINDY GILLESPIE, SHERRY BLACKBURN, and JOSEPH BLACKBURN, on behalf of themselves and a class, | ) ) ) ) | |
| v. | ) ) | CAUSE NO.: 3:09-CV-191-TS |
| CHASE HOME FINANCE, LLC, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In their single-count Amended Complaint, Plaintiffs Cindy Gillespie, Sherry Blackburn, and Joseph Blackburn allege that Defendant Chase Home Finance, LLC, violated a provision of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692c(a)(2), which prohibits debt collectors from communicating with consumers in connection with the collection of a debt if they know the consumer is represented by an attorney with respect to that debt. The Defendant has filed a Motion to Dismiss Plaintiffs' First Amended Complaint [DE 18] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendant argues that the Plaintiffs' claims fail for two reasons: (1) the letters the Defendant sent to the Plaintiffs are outside the scope of the FDCPA because they do not request payment of the Plaintiffs' debts; and (2) the Plaintiffs fail to allege a factual basis that plausibly supports their conclusion that the Defendant knew the Plaintiffs were represented by counsel. The Plaintiffs, in their Opposition to the Defendant's Motion, contend that the letters plainly indicate an attempt to collect a debt, and submit that their Amended Complaint contains facts to support the allegation that the Defendant was aware that the Plaintiffs were represented by counsel. The Defendant filed a reply, and the Motion is now ripe for ruling.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Legal

conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950–51. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1950.

A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

**COMPLAINT ALLEGATIONS**

In their First Amended Complaint, the Plaintiffs allege the following facts in support of their claim that the Defendant violated 15 U.S.C. § 1692c when it sent them letters regarding their mortgages, even though they were represented by an attorney with respect to those mortgages.

In 2006, Plaintiffs Cindy Gillespie, Sherry Blackburn, and Joseph Blackburn all filed suit to rescind mortgages that originated with Ameriquest Mortgage (Ameriquest). That suit is still pending as part of the Multidistrict Litigation against Ameriquest. In 2009, the Defendant, which is engaged in the business of servicing and collecting subprime residential mortgage loans,

3

acquired an interest in the Plaintiffs' loans. According to the books and records of the Defendant and its predecessors, the loans were in default. Additionally, "[o]n information and belief, [the Defendant] possessed books and records indicating the litigation status" of the loans. (First Am. Compl., ¶ 17.) On or about January 24, 2009, the Defendant sent Plaintiff Gillespie a letter. The letter, which is attached as Exhibit A to the First Amended Complaint, advises the recipient that her loan has been referred to the Homeowner's Assistance Department as a result of her unresolved delinquency. The letter states that the Department has a "variety of workout options which might help you resolve your delinquency" and asks the recipient to please call the Department immediately. (Jan. 24, 2009, Letter, Ex. A to First Am. Compl.)[1] It continues:

> A Homeowner's Assistance specialist will discuss with you any changes in your financial situation and determine your ability to repay the Loan and avoid foreclosure of the Property. Based on the information you provide, the specialist may be able to offer a workout option designed to cure your delinquency and keep you in your home.

(*Id.*) The letter closes: "We look forward to working with you and, while no guarantee can be made, we believe it would be beneficial for all parties to attempt to work out a resolution." (*Id.*)

On or about February 7, 2009, the Defendant sent the Blackburns an identical letter. However, their mailing contained a second page that was a notice for California customers under the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Dept Collection Practices Act, including notice that the Defendant "is attempting to collect a debt, and any information obtained will be used for that purpose." (Feb. 7, 2009, Letter, Ex. B to First Am. Compl.) This second page also asked the recipient, if he or she was represented by an attorney,

---

[1] In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaints. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

to refer the letter to counsel and provide the Defendant with the attorney's contact information, and advised that if the original obligation had been discharged or was subject to an automatic stay of bankruptcy, the notice was "for compliance and/or information purposes only and does not constitute a demand for payment." (*Id.*) The Blackburns reside in Indiana.

On February 23, 2009, the Blackburn's counsel sent an email message to Ameriquest's counsel in the Multidistrict Litigation stating that the new servicer of their loan (Defendant Chase) was attempting to foreclose because the servicer that sold the loan "neglected to inform the new servicer of the litigation status of the loan." (Feb. 23, 2009, Email, Ex. C to First Am. Compl.) Counsel responded that "Chase is checking to make sure that the litigation hold is on the Blackburn loan." (*Id.*) The attorney who sent the email message was not counsel of record for the Defendant in the Multidistrict Litigation, but "had been representing [Defendant] Chase's interests and resolving disputes regarding them in the litigation." (First Am. Compl. ¶ 20.) "On information and belief, [Defendant] Chase had in fact been in contact with counsel and aware of the litigation status of the loans involved in the case." (*Id.*, ¶ 21.)

On or about March 14, the Defendant sent the Blackburns a second letter that was like the first, but without the second page notice.

## ANALYSIS

Section 1692c of the FDCPA governs debt collection communications with a consumer. It states that a debt collector may not "communicate with a consumer in connection with the collection of any debt" if it "knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15

5

U.S.C. § 1692c(a)(2). The FDCPA defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. § 1692a(2), and thus, not all communications made to a debtor in regard to a debt are made for collection purposes. The FDCPA does not define "in connection with the collection of any debt."

The first challenge to the Amended Complaint that is presented by the Defendant's Motion to Dismiss concerns this statutory language and questions whether the FDCPA governs the Defendant's conduct at issue in this case. The Defendant posits that its letters to the Plaintiffs did not demand payment and thus were not "in connection with the collection of a debt." In support of its position, the Defendant relies on *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). In *Bailey*, the Seventh Circuit held that a letter informing debtors about the current status of an account and future payments was not a communication in connection with the collection of any debt. The letter informed the debtors that they owed $551.00 by a certain date, advised them of the due dates of their upcoming payments, and contained a warning that failure to pay the monthly installments would cause the forbearance agreement to become null and void and result in acceleration. *Id.* at 387–89. In holding that the letter was not in connection with the collection of any debt, the court noted that the letter did not "'demand' any payment whatsoever, but merely inform[ed] [debtors] about 'the current status' of their account," that the due dates listed in the letter were all prospective, and that the letter did not "even imply that anything owed under the [debtors'] forbearance agreement [was] overdue." *Id.* at 388–89. Regarding the warning about failing to pay monthly installments, the court reasoned that "[a] warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the

6

circumstance wherein payments are missed and a real dun must be mailed." *Id*. at 389.

*Bailey*, however, is only partially on point. Not only did the letter in *Bailey* not demand payment, it did not refer to any debt that was delinquent in status (the delinquent debt having been displaced by a renegotiated forebearance agreement). The Plaintiffs argue that *Bailey* is distinguishable because the language in the Defendant's letters "plainly indicates an attempt to collect a debt." (Pls.' Opp. 5, DE 20.) The Plaintiffs maintain that the following expressions are "just elaborate ways of requesting payment:" offering to "help you resolve your delinquency" and to explore "options which may help you resolve your delinquency"; and stating that "A Homeowner's Assistance specialist will discuss with you any changes in your financial situation and determine your ability to repay the loan" and "may be able to offer a workout option designed to cure your delinquency and keep you in your home." (*Id.*) They maintain that the "curing of a default" and "resolving of a delinquency" are akin to payment of a debt. (*Id.*) The Defendant asserts that "[t]he test under *Bailey* and its progeny for whether communications are within the scope of the FDCPA is whether they actually request or demand payment, which the Mortgage Work-Out Letters do not." (Def.'s Mem. 6, DE 19.)

Other courts have considered communications to debtors in light of *Bailey's* holding and extended it to situations closer in similarity to those presented here. In *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *3 (N.D. Ill. May 21, 2003), the court held that a videotape encouraging borrowers to contact the loan servicing center and suggesting possible loan workout options did not demand payment and could not be construed as a communication in connection with the collection of any debt. After noting the holding and reasoning in *Bailey*, the court stated,

7

> Here, the videotape that Fairbanks sent to plaintiff does not demand any payment whatsoever; it does not even inform plaintiff of the status of her account or future due dates. It does not provide any information at all about plaintiff's particular loan status. The videotape simply encourages borrowers to contact Fairbanks' Loan Servicing Center and suggests possible loan workout options. Because the videotape does not demand payment from plaintiff, it cannot be construed as a communication in connection with the collection of debt.

*Porter*, 2003 WL 21210115, at *3. In *Santoro v. CTC Foreclosure Service*, 12 Fed. Appx. 476, 480 (9th Cir. 2001), the court concluded that "[a] letter suggesting loan workout options is not seeking to collect the debt."

The Plaintiffs argue that *Porter* is distinguishable because the videotape did not refer to the debtor's specific loan or identify its status. The Plaintiffs contends that the *Santoro* court ruling was erroneous because the court should not have extended *Bailey* to situations where the loan being referenced in the communication is in default or delinquent. The Plaintiffs are correct that the letter in *Bailey* did not address a debt that was delinquent in its status, but that the letters in this case do. However, this distinction does not change the nature of the communication in this case to one that was in connection with the collection of any debt.

It can hardly be disputed that a debt collector wants to receive timely loan payments, especially if payments are already overdue. Whether a debt collector (who presumably desires payment, i.e., "resolution") actually requests or demands payment in a given communication is a separate inquiry. *See*, *e.g.*, *Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008) (finding that a letter notifying a customer that her outstanding balance had been transferred to her new account for her "convenience in making payment" did not contain language that she was "required to pay the debt" and thsu was not communication in connection with the collection of any debt). Likewise, the work-out letters

8

sent to the Plaintiffs in this case did not require that they make any payments. Also, as the court in *Mabbitt* found, this Court finds it useful to remember the purpose of the FDCPA—"to eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692e. *See Mabbitt*, 2008 WL 723507, at* 4 (quoting *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389 (6th Cir. 1998), for its reasoning regarding the purpose of the FDCPA with regard to a letter that sought peaceful resolution of a debt). Although the Sixth Circtui case relied on by the *Mabbitt* court is factually distinguishable, its reasoning is instructive:

> To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt, possibly without litigation, would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt—something that is clearly at odds with the language and purpose of the FDCPA.

*Lewis*, 135 F.3d at 399.

The Court finds that the letters sent to the Plaintiffs were in the nature of providing information as opposed to being in the nature of a debt collection demand. The letters advised the mortgagors that their delinquent debts had been turned over to the Defendant's Homeowner's Assistance Department, and stated that options may be available to the mortgagors to resolve their delinquencies and save their homes from foreclosure. Although ensuring payment of the debts cannot be denied as the Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form. Accordingly, they are not the types of communications that § 1692c proscribes.

In opposition to the Defendant's Motion to Dismiss, the Plaintiffs argue that the Federal Trade Commission (FTC) takes the position that communications informing debtors of options regarding their delinquencies "must comply with the FDCPA," and points to an FTC advisory

9

opinion issued on March 18, 2008. (Pls.' Opp. 5.) The Court takes no issue with the FTC opinion. However, it does not have the impact the Plaintiffs suggest. The question posed to the FTC was not whether informing consumers of options to workout loans and avoid foreclosure could, by themselves, be characterized as demands for payment or otherwise as being in connection with the collection of a debt, and the FTC opinion did not purport to address when a communication is in connection with the collection of any debt. Rather, it advises that a debt collector does not violate FDCPA provisions regarding validation notice requirements or deceptive practices when it includes workout options in what are otherwise (presumably) covered communications to debtors. (FTC Mar. 19, 2008, Opinion at 2, DE 20-7) (concluding that "there is no *per se* violation of Section 809(a) if a debt collector in the foreclosure context discusses settlement options in the collector's initial or subsequent communications with a consumer," and "that a debt collector's communication with a consumer regarding his or her options to resolve mortgage debts and to potentially avoid foreclosure would not necessarily violate" the prohibitions against the use of false, deceptive, or misleading representations, but would require a "fact-based inquiry"). The phrase "in connection with the collection of any debt" does not appear anywhere in the FTC Opinion.

Although the Defendant's letters themselves did not demand payment, one communication to the Blackburns contained a second page that included language required by the FDCPA to be in any initial communication with a consumer: requiring disclosure that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). The Court finds that including this language on the second page did not alter the nature of the communication or the information provided in the letter. *Cf.*

*Lewis*, 135 F.3d at 399 ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment.").

Assuming all well-pleaded facts in the Plaintiffs' First Amended Complaint are true, the Plaintiffs do not state a claim upon which relief can be granted. The letters attached to the Amended Complaint and relied upon by the Plaintiffs to state a claim, are not communications in connection with the collection of their debts.

## CONCLUSION

For the forgoing reasons, the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [DE 18] is GRANTED. The Defendant's previous Motion to Dismiss the Plaintiff's Complaint [DE 14] became moot when the Plaintiffs filed their Amended Complaint, and that Motion is accordingly DENIED AS MOOT.

SO ORDERED on November 20, 2009.

                                                s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT
                                                FORT WAYNE DIVISION